May it please the Court, I'm Robert Jobe and I'm appearing today on behalf of the Petitioner, Jayanendra Sharma. Like the last case, this concerns a motion to reopen based on change country conditions, change conditions in Fiji. It's my view that this case has to be remanded back to the Board of Immigration Appeals because the Board simply didn't grapple with the argument that was raised in the motion to reopen. In the motion to reopen, and I'd like to just walk through this, this is on page 92 of the record, it begins there. This is the heart of the motion to reopen that was filed by Mr. Guajardo's office. That first paragraph there talks about, you know, a schism extending into the realm of religion. And it goes on to argue that since 1995 there have been changes in conditions in Fiji that make it likely that this individual is going to face persecution based on his Hindu faith. And if you look at what was, what's argued there, the first paragraph concerns a Department of State report concerning the year 2005. It was issued in March of 2006. The next paragraph concerns the International Religious Freedom Report from 2005. Turning on to the, going on to the next page, you have one document that postdates the coup, a December 2006 article. But then immediately after that is a March 27, 2005 argument. Our article immediately after that is an article that's from 2003. I mean, the point here is that the changed country conditions at issue, they're all pre-2006 coup. And that's, that's in keeping with the law, because in making a motion to reopen, he simply had to make a showing that conditions had changed since the hearing. But when did he file the motion to reopen? He filed the motion to reopen shortly after the coup, but the point is that, Your Honor, under the law, there's no reason to file a motion to reopen.   But is there a reason to do that somewhere around the time of the supposed changed circumstances? No, there's not. I mean, the law is that you have to, with respect to a motion that's based on an application for asylum, you have to show changed country conditions. And you have to show that conditions have changed since the hearing was held. In this case, the hearing is the 1995 hearing. But the way you're interpreting the law, if there were changed circumstances in 2000, which made things worse, and then changed circumstances again in 2005, that made things better, and then he filed the motion to reopen in 2006, he could do it based on what was true in 2000 and not what was true in 2005. Is that essentially what you're saying? Probably, yeah. That is. Does that make any sense? Whether he — In other words, in my hypothetical, he would be getting a reopening of his asylum petition based on non-extant conditions. And I don't really think that's an issue presented here, because basically the point is, Your Honor, that he had to show a change in conditions since 1995, in our view. Okay. There's no dispute about that. Basin, this Court's decision in Basin, is directly on point on that question. Okay. He presents all kinds of evidence showing that there have been these developments with respect to religion since 1995. The Board didn't consider any of it. If you look at the Board's decision, as well as the I.J.'s decision, they limit their analysis to reviewing the evidence of country conditions that post-date the coup. But pardon me, Mr. Jobe. Yes, Your Honor. Let's grant that there have been a change of atmosphere in Fiji since 2005 based on religion, because the preponderant Methodist church groups have been calling for a Christian state. Right. Right? Since 2005, Your Honor. Since 2005. The fact that a religion is more active or is supported by the government, is that sufficient to show persecution of the non-religious group? No. Not in and of itself. It's the acts of persecution which grow out of the change in religiosity. I guess, Your Honor, we're on different tracks here, because you're looking at this, I guess, from the perspective of, well, is there evidence that would compel the conclusion that this person has a prima facie case? Well, if we're in the Roman Empire, the evidence of the forum where the  There's no evidence of the persecution because of religion, right? And I would concede that based on this record, there is no compelling evidence that would require the Board to grant the motion. But that's not my point. My point is that the Board didn't consider any of the evidence. What is the evidence? You're saying that there was evidence from somewhere between 1993 and 2006. Yeah, exactly. Not the 2006 coup. Right. Specifically focusing on religion. And, you know, my problem with the And is your argument also that changed circumstances can be any changed circumstance, not one that necessarily demonstrates more persecution? Well, you have to have a change in country conditions. But in addition to that, in order for the motion to be grantable, you have to show that the person is prima facie eligible. Now, here the Board said that we don't, we don't, we find this person has failed to establish prima facie eligibility. But they did that, if you look at both decisions, by focusing exclusively on the evidence that postdates the 2006 coup. Okay. But what is there from the prior period that would support it? Well, let's look at the evidence that was presented. Page 102 of the record is the Department of State report. And it says break-ins, vandalism, attempted arson, thefts directed at houses of worship, predominantly Hindu temples, continue to increase. Other evidence that was ignored by the Board. How do you know it was ignored by the Board? Because they didn't cite it in their decision? No. They actually ignored it, Your Honor. Because if you look at page 82, and this is really the point that I want to make. Let's start with the IJ's decision. The IJ's decision says Respondent cites the December 2006 coup as the reason for the changed conditions in Fiji. Well, he never did that. That's not the point of the motion. And then it says. Let me get it wrong with you. Page 82. Yeah, 82. What paragraph? It's the first full paragraph there where it says Respondent submits a list of exhibits. And then the IJ goes on and says the Respondent cites the December 2006 coup as the reason for the changed conditions in Fiji. That's not what the motion said. However, of Respondent's 19 exhibits, only eight of these items are dated after the 2006 coup. And then moving down to the, you know, two paragraphs down, it says, there is nothing in the record to indicate that due to the 2006 coup, conditions have deteriorated for Indo-Fijians or that he would be in jeopardy if he returned. The next sentence says, in fact, the materials submitted, of the materials submitted, there's no mention of any changed circumstances for Indo-Fijians following the coup. And what was the error that he committed in that? Pardon me, Your Honor? And what error was committed by saying that? Well, they have to consider the evidence of changed country conditions since the hearing in 1995. They don't understand the thrust of the motion. Well, no. I guess I didn't understand the thrust of their motion either, Mr. Chairman. And I read it very carefully. And I, you know, when you look at the motion, it starts at least on page 89 of what I've got, the document I have here. It says historical overview of Fiji. Exactly. And that goes through what you just went through. And then you go a little bit further. It says after the December 5, 2006 military coup. Right. And it does. It mentions that. But if you look at it. It does more than mention it. There's a discussion that follows pretty significantly after that statement about the 2006 military coup. Of course. And it goes on and on and on. And in the end, he ends up talking about his wife and his daughter. Take a look at that where it begins there, Your Honor, after the December 5, 2006 coup. And those first two paragraphs discuss the coup. But if you look at the next several pages, it's all stuff that predated the coup. Beginning on page 92, all that stuff. And that's the heart of the argument. The whole argument here is that this guy faces a risk of persecution on account of religion. All the evidence that he's relying upon. In his application, I didn't go back and look at his application. In his application, did he check religion? Yes. And he mentioned several times that he can't practice his religion. But the thrust of the argument is right here in these three pages. And all the evidence, save one article, predates the coup. And if you go back and now take a look at the BIA's decision here, because the BIA repeats the error. The BIA has really, it's just one sentence that's critical here. And they say, for all the reasons noted by the immigration judge, we agree with her determination that the respondent has failed to show materially changed conditions in Fiji arising from the coup in 2006. That's not the point. So what you want us to do is remand them to the BIA and say, consider whether there was evidence of changed conditions since the 1995 hearing. Yes. Remand pointing out to the board that it can't limit its review to events that post-date the coup, because that's not the legal question presented. They have to re-decide this motion to reopen, considering all the evidence that was presented. Ms. Goeb, if the conditions commenced changing in 2005 and your client did not file until 2007. Right. Isn't he untimely? No. No. I mean, the application for asylum was filed a long time ago. There's no one-year filing issue here. But the motion to reopen should be within 90 days. No. But then if there is a changed condition, within how long of the changed condition? Yeah. The statute is very generous in that respect and basically says there's no time limit if you're seeking to apply or reapply for asylum, as long as you can show that there have been changes in conditions since the hearing. So if the changed conditions occurred in 2005, an application to reopen now in 2011 would still be timely. Yep. And you're not saying, you're not even saying not in 2005. No. I don't get what you're saying the whole time. The reason being, obviously, Your Honor, is that the statute is written generously to protect people who might face persecution. We have a case saying that. Basin. It's B-H-A-S-I-N. One of the problems is you didn't write the briefs. No, we didn't write the briefs. But the case that's directly on point there is a case called Basin, it's B-H-A-S-I-N, where the court makes clear that what's critical is was the evidence available at the time of the hearing and does it reflect changes since the time the person had his hearing in front of the immigration judge. All right. Let's hear from the government. May it please the Court, Rebecca Hoffberg on behalf of the United States Attorney General. Just to pick up where we just left off here, he did first apply for asylum in 1991. He withdrew his claim for asylum and specifically chose not to pursue the claim at that point. There have been four coups in the last 20 years. I think that that has come up in the previous case. It wasn't mentioned now. It is in the record. Essentially, every coup is the same issues that are recurring over and over. So if you look at his original asylum application in 1991, it almost doesn't matter whether you want to look at the country conditions in 2000 versus 2006 in terms of which coup he wants to use as his. I mean, I say this really it's the same situation in terms of a Hindu-Christian conflict that has been ongoing for the past 20 years. Well, let's back up a minute. If he withdrew his application and he took voluntary departure, that's what happened, right? Correct. Now, the changed country conditions permission applies even if he never applied for asylum in the first place? The change, if he was reopening to apply or if it was an untimely motion to reopen and the basis of the motion to excuse either the time or number bar was for changed country conditions to support an asylum claim. But there's now a one-year limit on asylum from when you come in the country. Correct. Is that how — does that have anything to do with a timeliness requirement with regard to an application to reopen for changed conditions, particularly if there was no earlier asylum application? So does that matter? Well, in that particular case, my guess is, is that the government or someone would submit information that would have been available at the time that asylum potentially could have been applied for, and you would have then been able to — But you're not arguing that the one-year limitation in any way applies here. There's no time. To answer the question that we were discussing earlier, you agree that there's no time limit on filing. The statute does not specify. But what would happen is if you waited to file, I mean, of course, you would include if the basis of his motion, let's say, was the 2000 coup. Okay. There was a 2000 coup and then there was a 2006 coup. So he files 2000. The government could still show the conditions after that potentially have improved if he waited so long. Well, right. But that would come in on the merits, right? It wouldn't come in at the reopen stage. That's correct. And the thing is that this was — if you look, again, at the 1991 state of affairs that he's claiming in his original application, he's talking about how Hindus are mistreated. He's an Indo-Fijian, and he's talking about the mistreatment by the ethnic or indigenous Fijians, which are traditionally Methodist Christians, okay? So this is the same type of conflict, the same type of claims you heard in the earlier case that there's some burglary, there's some mistreatment, there's, you know, it's not — it's more of a discriminatory nature that has been going on. There's a limit in Parliament as to how many seats the Hindus can have. But the real question is why isn't he technically correct in that the IJ and the BIA did take the petition as being based on a 2006 coup and nothing else? Okay. Because on pages, I believe it's 91 and 65 of the record, I think Your Honor pointed this out before when he was speaking, he specifically makes his motion based on the 2006 coup. Well, I don't know. He's telling a little story, and it starts out with there's all these other problems and then there's a problem in 2006, but that doesn't say that the basis for it is 2006 and the basis for it is everything. Right. Well, what's interesting is that in response to the fact that the IJ sort of noticed that a lot of the evidence predates 2006, this is on page 71. This is his appeal brief to the board. He says, of course, some of the exhibits will predate the most recent coup because the history of Fiji requires as much in order to fully apprise the reader of the basis for the claim. Okay? So he's almost admitting, and that's — What page is that on? This is page 71. Okay? So — On his brief to the BIA. This is his brief to the BIA. This is — yes. So he filed the motion to reopen. Again, remember, a lot of times the motion is first filed to the board, not in this case because it was left off with the IJ. So he was appealing the IJ's denial of the motion. So in that appeal, he says — he tries to explain, well, I included the predating 2006 evidence because I was trying to give you the overall history because you needed that to appreciate the 2006 circumstances, is essentially what he's saying. Now, I understand that this is not the counsel that wrote this motion, but that is what the motion says, and that is what is in the record. And the fact that he would specifically choose to point out what happened after 2006 in his motion, regardless of the fact that he failed to include such evidence in the March and would not address a situation in December of 2006. And so, Your Honors, you have to take the motion as it was presented to the agency, which was essentially based on this 2006 coup. And as you're right, it was filed in January 2007. It included the State Department announcements. What is included is State Department announcements dated in January 2007. He's trying to use those. Well, look. Look what happened after the coup. There's these travel warnings. There's these advisories. So he was clearly trying to use the 2006 coup as the basis for his motion to reopen, and that would have logically made sense that you would file right after the circumstance. Why would you wait? If you think that that increases your chances for asylum, why would you wait until the conditions potentially improve after that? So the fact is that it would have made sense to base a 2006 coup situation and file the motion in January 2007. However, he failed to make the requisite showing from the legal standpoint of what is required in a motion to reopen for changed country conditions. And he had to show that conditions were materially different, you know, regardless of then if you want to take 2006. As I mentioned, the 2006 coup actually was more in retaliation of the 2000 coup. And what happened was, I mean, just to briefly say, if anything, it sort of was a bit of a victory for Hindus in a sense because the guy, Frank Benamurera, I think his name is, was essentially taking out the prime minister, the Christian prime minister who overtook the Hindu prime minister in the previous election. As I mentioned, it goes back and forth. Unfortunately, it is a very chronic problem. But again, these four coups are about the same thing. The same issues are at stake. The same result is that nobody is hurt in these coups as well. And this is what I also want to get to. These coups are nonviolent, and the fact is it's a political situation. It's political unrest. The fact that the Hindus are given less seats in the government, that they are not able to have any majority of the seats, okay. But there is no bloodshed because of it. There is also no evidence. Yes. Is there a pending petition for adjustment of status based on his marriage? That's a good question, Your Honor. And the government was wondering the same thing. No evidence was presented in this motion to reopen that he, you know, was also of course it would be an independent matter. I was personally trying to see if any I-130 had even been filed. He was married previously. And remember, this is his second motion to reopen. He had a first motion to reopen based on his first wife. And apparently no I-130 was ever filed. And that is why or was never approved. That's why the IJ denied his first motion to reopen. Whether or not there is an I-130, well, that is something that the petitioner needs to take the appropriate steps at this point to pursue that form of relief. And I wanted to add in because I see I'm starting to run short on time. The reason obviously, you know, the basis for his wife and his daughter mentioning the conditions for women in Fiji that were so important in the last case, not important in this case because his wife and daughter are U.S. citizens. And as you just mentioned, he very well may be able to adjust based on them. There is no reason why they would ever go back to Fiji. We cannot send them back to Fiji. The court should not find that any of the circumstances about women or any disfavored group analysis whatsoever applies to this case, much less the fact that it wasn't even raised that way. And I'd also like to point out that although he makes a blanket statement that his sister was somehow granted asylum, there is no evidence in the record to support that. And her own letter in support of him that's on page 197 of the record, it's dated in 2007, again to support his 2007 motion to reopen. She doesn't even claim that she got asylum in 2002. So I just wanted to point that out. There has been no grant of asylum that the government is aware of proof in the record for a woman from Fiji, regardless of how that may or may not relate to this case or the previous one. But however, the fact is that his wife and daughter are citizens, and they will face no harm in Fiji because they will not be sent to Fiji. And if he would like to pursue adjustment, there is a course of action that I am sure my opposing counsel is aware of, and those are steps that can be taken to file another motion to reopen. And, again, if he wants to update the record with additional evidence, the 2006 Department of State report, for example, he can file another motion to reopen, but that evidence is not in the record. And I see that my time is running out. So as the record stands, the motion was based on a 2006 coup that was substantially the same as the three previous coups and did not offer a material change in circumstances to support reopening. Thank you. Mr. Job, let me ask you a question. Yes, Your Honor. If I understood you correctly, you were saying that the error of the BIA here was not considering the changes that had occurred in Fiji from 1995 to 2006. But in the petition to reopen at page 88, the petitioner says, in light of the Respondent's religious and ethnic background, this is important, and current conditions in Fiji, there is no question that the Respondent has demonstrated a reasonable likelihood of meeting the standard and has therefore stated a prima facie case for asylum based on changed circumstances in his country. So he's talking about current conditions, not the conditions which obtained between 1995 and 2005, but the conditions which obtained after the 2006 coup. Is that not right? No. He argued both. I'm reading that wrong? Yeah. You're not reading that passage incorrectly, but you're reading it in isolation, and the problem is he argued both in this motion. Now, and if you read the pages that I cited, I'm confident that you'll agree with me that when you read those sections again in the motion, he's plainly arguing about country conditions affecting religion, and all the evidence that he's citing predated the coup. I'm sorry, Your Honor. The question is, as I was saying, whether there is – whether there is a reasonable – whether a fair reading – assuming one could read this the way you did, could one also read it otherwise, i.e., the motions and the brief to the board? And given the way the motions split up, i.e., historic overview of Fiji and then after the December 5, 2006, and given the language that Judge Beyer just read and given the language that your opposing counsel read a little while ago from the appeal brief, the question is, was it not fair to read these papers as based – and given some commonsensical approach, too, i.e., why would he be concerned about something that isn't current, why it was not fair to read this as based on the 2006 coup with the rest of it as historical understanding, which is what he said it was. And I think that's a good point, Your Honor, because the bulk of the evidence that was presented all predated the 2006 case. The evidence may be, but the question is what was the – but then he ends up apologizing for that evidence and saying that the reason I included it was just to give you some history. Yes. I mean, without a doubt, Mr. Guajardo could argue this a lot better. There's no doubt about that. But the evidence that was presented and the argument that was made clearly focuses not just on current country conditions, and I'm not disagreeing with your reading of that passage, Your Honor, but it focuses on events that occurred since 1995. And if I could just make one other point about the adjustment of status thing, because this – it's – you know, we're relatively new to this case, but this case, it seems to me, is one that should go to mediation because he is adjustment eligible. He's been here an awfully long time. The government's being somewhat disingenuous when they say, oh, he can file a motion to reopen because he can't. I mean, he's time barred from filing a motion to reopen for purposes of adjusting his status through marriage. The only way that he can do that is if the government joins in the motion. And the way we would normally seek to get the government to join in is if we were in mediation and we prepare a motion. Why is he time barred? Pardon me? Why is he time barred? Well, the only exception to the normal 90-day period for filing a motion to reopen is this exception, for asylum where you can show changed country conditions. I see. I see. I see. It doesn't apply to a marriage-based case. So he can't make that argument. The only way he can make that argument and pursue a claim based on his long-term marriage is if the government joins in. Are you – is this all leading to an ineffective assistance of counsel claim and another motion to reopen? Well, we're working on a motion to reopen right now, Your Honor. But the marriage part of it is probably not – that's not an aspect of it. Like I say, the only way I think we're going to be able to make that is if the government joins in. And we don't know whether they're going to be willing to do that. But we can't make the motion by ourselves. That's just not true. Okay. Thank you, Mr. Piotrowski. Thank you. Sharma v. Holder is submitted at this time. Our next case for argument is Majors v. McDaniel. Thank you, Your Honor.
judges: Paez, Berzon, Bea